THE MORRIS ·COUNTY BANK vs. THE ROCKAWAY MANUFACTURING COMPANY.

1. A *lien claim* filed upon separate buildings and upon distinct lots of land, without appoitioning the cla.m and designating specifically the amount claimed upon each, is not a compliance witn the statute (*Nix. Dig.* 524), and must be postponed to the claims of other encumbrancers.

2. Nor does it remedy the objection, that it appears by the evidence that the .claim may be apportioned between the different buildings in proportion to the value of the materials used in the construction of each of them.

3. A claim, not filed according to the requirements of the ɛtatute, constitutes no encumbrance upon the premises.

4. A *judgment at law* entered upon the lien, the lien claim not having been filed pursuant to the statute, gives it no priority in payment, nor any advantage over liens upon which judgment has not been rendered.

---

The bill in this cause was filed to foreclose two mortgages on certain real estate of the Rockaway Manufacturing Company.    The main controversy was in regard to the validity and priority of sundry lien claims for labor and materials furnished in the erection and repairing of certain buildings on the mortgaged premises.    An opinion was delivered at February Term, 1862.*    But the mind of the court being in doubt, as to whether, under our statute, a lien claim could . be filed to include several buildings, or buildings standing upon distinct lots of ground, without specifying what portion of the debt is claimed as a lien upon each building, the Chancellor reserved his opinion upon that question, and ordered

a reference to a master to ascertain and report the amount and priority of the respective claims and encumbrances, and to report more definitely the situation of the different buildings, the manner of using the same, and the proportion of labor and materials furnished by the several lien claimants for the respective buildings.

The master's report, made in pursuance of the decretal order, is as follows:

In pursuance of a decretal order of this court made in the above cause, and bearing date on the nineteenth day of July, in the year of our Lord one thousand eight hundred and sixty-two, by which it was, among other things, ordered, adjudged, and decreed, that it be referred to the subscriber, one of the masters of said court, to ascertain and report the full amount due to the defendant, John I. Blair, and to the complainants on their several mortgages in said order referred to; also, the amount due to the defendant, Julius Decasse and the other claimants mentioned in said order and in the pleadings in said cause, whether by judgment or mechanics liens; and whereby also, the said master was directed to inquire the relative value of the steel furnace and buildings, whereon said Julius Decasse claims a specific lien, and of the undivided half of the steel furnace tract, claimed as the curtilage thereof, on the one hand, and of the other undivided half of the steel furnace tract and the other buildings thereon, on the other; and whereby also, the said master was directed to ascertain and report to the court the situation of the different properties, mills, furnaces, and buildings embraced within and upon the said rolling mill tract and steel furnace tract, and the manner of using the same, whether as separate properties or factories, or as one factory and establishment, and also in what manner and proportion the several lien claimants have furnished labor or materials for the several properties, buildings, &c.; and that the said master do make a separate report in reference to said matters, &c.

I do respectfully report to the Chancellor that I have been attended by the solicitor of the complainants and also by the

solicitors of several of the defendants in said cause, and that I have taken the depositions of witnesses in reference to the several matters so referred to me, which depositions are hereto annexed, and after hearing and considering the evidence taken before me, and also examining the evidence heretofore taken in this cause and the exhibits made therein, I do respectfully report, that there is due to the defendant, John I. Blair, at the date hereof, for principal and interest on his said bond and mortgage mentioned in said order, and which have been presented and offered in evidence before me in his behalf, and have been marked by me *Exhibits A* and *B*, the sum of $2870.66, as will more fully and particularly appear by reference to *Schedule A*, hereto annexed, which I desire to be considered as a part of this report. I do further report, that there is due to the complainants at the date hereof, for principal and interest on the bond and mortgage held by them, made by Freeman Wood and wife to Theodore T. Wood, heretofore offered in evidence in this cause, and marked *Exhibits W* 1 and *W* 2, the sum of $29,793.33, as will more particularly appear by reference to *Schedule B*, hereto annexed, which I also desire to be taken as a part of my report. I do further report, that there is due to the complainants, at the date hereof, for principal and interest on the mortgage given by The Rockaway Manufacturing Company to the complainants, bearing date on the twenty-second day of February, 1856, heretofore offered in evidence in this cause, and marked as *Exhibit W* 4, on the part of the complainants, the sum of $35,438.93, as will more fully and particularly appear by reference to *Schedule C*, hereto annexed. I do further report, that there is due to the defendant, Julius Decasse, on the lien claimed by him in his answer filed in this cause, for principal and interest at the date hereof, the sum of $4954.97, as will more fully appear by *Schedule D*, hereto annexed. And I do further report, that although depositions have been taken at the instance of the complainants, as to what is the proper and necessary curtilage to the steel furnace, on which the said Julius Decasse claims a lien, I have not regarded that

part of said order of reference which directed me to report in what manner and proportion the several lien claimants have furnished labor or materials for the said several properties and buildings, as applying to the said claim of said Decasse, but have regarded said order as sustaining his said claim of lien as made by him. I do further report, that there is due at the date hereof to the defendant, Freeman Wood, upon the judgment recovered by him against The Rockaway Manufacturing Company, in the Circuit Court of the county of Morris, on the twenty-sixth day of October, 1857, of which judgment an exhibit was heretofore made in this cause (marked *Exhibit C* 29) the sum of $3489.98, as will more fully appear by reference to *Schedule E*, hereto annexed, and made a part of this report. And I do further report, that said Freeman Wood furnished materials for the steel furnace, mentioned in said order, to the amount of $1528.25, and for the rolling mill to the amount of $4862.76, upon which demands generally various payments were made by The Rockaway Manufacturing Company, and said payments were credited generally upon said account, and that said judgment was obtained by said Freeman Wood for a general balance due to him on said account. And I do further report, that in my opinion it is just and equitable that the judgment of said Freeman Wood should be paid out of the proceeds of sale of the said rolling mill and steel furnace property in the same proportion as he originally furnished materials for said respective properties, and claimed liens thereon, and that therefore the sum of $834.54 should be considered a lien on the steel furnace property, and be paid out of the proceeds of the sale thereof; and the sum of $3489.98 should be considered as a lien upon the rolling mill property and paid out of the proceeds of the sale thereof. I do further report, that there is due at the date hereof, to the defendant, Stephen Lyon, upon the judgment recovered by him against The Rockaway Manufacturing Company, as his claim of lien in the Circuit Court of the said county of Morris, on the twenty-fifth day of September, 1856, the sum of $616.57, as will

more fully appear by reference to *Schedule F*, hereto annexed, and made a part of this report. And I do further report in reference to said claim, that it appears by the claim of lien made an exhibit in this cause by said defendant, that the whole amount of labor done and performed by him for The Rockaway Manufacturing Company, at the said steel furnace and at the said rolling mill, amounted to $1109.47; that several payments were made to him and credited generally on his said account, and his judgment was recovered for the general balance due him on said account; and that it does not appear from said lien claim of which an exhibit was heretofore made in this cause, nor can I ascertain from the evidence heretofore taken, or from the depositions taken before me and hereto annexed, with any degree of certainty, what proportion of the amount still remaining due to said claimant, as herein before reported, is due for labor done and performed at the rolling mill, and what proportion for labor done and performed by the said claimant at the steel furnace building. I do further report, that there is due at the date hereof, to the defendant, Eliphalet Sturtevant, upon the judgment by him obtained on the seventeenth day of November, 1856, against The Rockaway Manufacturing Company in the Circuit Court of the county of Morris, of which an exhibit has been heretofore made, the sum of $291.40, as will more fully appear by reference to *Schedule G*, hereto annexed, and made a part of this report. And I do further report in reference to said claim, that the labor and materials composing it were furnished for, and done and used at the rolling mill property. I do further report, that there is due to Cummins McCarty, another of said lien claimants, on his judgment obtained against The Rockaway Manufacturing Company in the Morris Circuit Court, on the twenty-second day of October, 1857, and heretofore made an exhibit in this cause, the sum of $1082.88, as will more particularly appear by reference to *Schedule H*, hereto annexed. And I do further report in reference to said claim, that the materials constituting the same were furnished for and used at the building known as

the rolling mill property. And I do further report, that there is due to James H. Bruen, another of said lien claimants, at the date hereof, on two judgments recovered by him in the Morris Circuit Court against The Rockaway Manufacturing Company, on the seventeenth day of November, 1857, of which exhibits have been heretofore made in this cause, the sum of $1830.26, as will more fully appear by reference to *Schedule I*, hereto annexed. And I do further report as to said claimant, that the sum of $1568.77, being the amount due on one of said judgments, is for labor done and materials furnished by the said claimant for the rolling mill property, and the sum of $261.49, the amount of the other judgment, is for labor done by said claimant and materials furnished by him for the steel furnace property. I do further report, that there is due at the date hereof to the claimants, William R. Sayre and Marcus Sayre, on their claim of lien, the sum of $1745.66, as will more fully appear by reference to *Schedule K*, hereto annexed. And I do further report in reference to said claim, that I am unable to ascertain, either from said lien claim heretofore made an exhibit in this cause, or from the evidence offered by said claimants, what proportion of said materials mentioned in said claim were furnished and provided for or used at the steel furnace. I do further report, that there is due as the date hereof to Jacob L. Fichter, on his judgment obtained in the Supreme Court against The Rockaway Manufacturing Company, on the twenty-sixth day of June, 1856, the sum of $3129.47, as will appear by *Schedule L*, hereto annexed. I do further, in pursuance of the directions contained in said order of reference, respectfully report, that in my judgment, founded on the depositions taken before me and hereto annexed, " the relative value of the steel furnace and buildings, whereon the said Julius Decasse claims a specific lien, and of the undivided half of the steel furnace tract claimed as the curtilage thereof on the one hand, and of the other undivided half of said tract on the other," (there being no buildings on said tract) is five to one, that is to say, that the value of the steel furnace and buildings, on which

said lien is claimed, together with one half of the land described in said lien claim, claimed as the curtilage thereof, is five times the value of the undivided half of said tract. I do however further respectfully report, that the tract or lot mentioned in said order of reference as lot No. 3, on which said steel furnace is said by said order to stand, and which was sold by me as herein before reported, for the sum of $3050, embraces not only the steel furnace, the steel furnace building, and the land on which they stand, and which, in and by said lien claim of said Julius Decasse, is claimed as the curtilage thereto, but also the dwelling-house and lot specially excepted in said lien claim, and a lot of about half an acre lying on the west side of the road mentioned in said lien claim, as will more fully appear by a comparison of said lien claim with a diagram of the premises marked as *Exhibit* —, on the part of complainants. And I do further report, that in my opinion, based on the depositions taken before me, valuing the whole of said lot No. 3 at the sum of $3050, the amount realized therefor at public sale, the sum of $697.14 is the proportion or part thereof which would represent the value of said dwelling-house and lot, and said lot on the west side of the road, leaving the sum of $2352.86 as the part of said proceeds of the sale of said lot No. 3, arising from that part thereof embraced in the said lien claim of said Julius Decasse. In obedience to that part of said order of reference directing me to "ascertain and report to the court the situation of the different properties, mills, furnaces, and buildings embraced within and upon the said rolling mill tract and steel furnace tract, and the manner of using the same, whether as separate properties or factories, or as one factory and establishment," I do further respectfully report, that the said rolling mill tract and the said steel furnace tract are separate and distinct tracts, lying about one eighth of a mile from each other, and separated entirely by the land of a third person, though for many years past they have been owned by the same owner. That upon the rolling mill tract are situated the rolling mill,

forge, coal-house, blacksmith shop, and the building used as an office ; and on the steel furnace tract are situated the steel furnace, the steel furnace dwelling-house, so called, and the canal basin and dock. That the business carried on at the rolling mill and forge has no necessary connection with that carried on at the steel furnace, and in point of fact until The Rockaway Manufacturing Company purchased said premises, the business carried on on the two tracts, though conducted by the same owner, was kept entirely separate and distinct, except that the dock was used for the convenience of both tracts, as it was also used for landing and shipping freight for other persons in the neighborhood, as other canal docks were used. That so far as appears, since the premises were purchased by The Rockaway Manufacturing Company, the whole have been regarded as one establishment and used as such, though the steel furnace was used to a very. limited extent, and was not completed when the company failed.

All which is respectfully submitted.

THEO. LITTLE, *Master, &c.*

Dated January, 3d, 1863.

The case is now heard upon a motion to confirm the master's report.

*Chandler,* for complainants.

*Keasbey,* for Decasse.

*McDonald,* for Sayre.

THE CHANCELLOR. The case is not essentially changed in any of its material aspects, touching the rights of the lien-holders, by the evidence adduced before the master.

The master reports that the rolling mill tract and the steel furnace tract are separate and distinct tracts, lying about one eighth of a mile from each other, and separated entirely by the land of a third person, though for many years past

they have been owned by the same owner. That upon the rolling mill tract are situated the rolling mill, forge, coalhouse, blacksmith's shop, and the building used as an office; and on the steel furnace tract are situated the steel furnace, the steel furnace dwelling-house, and the canal basin and dock.

The lien claim of Sayre describes the three principal buildings on the rolling mill tract and one building on the steel furnace tract, and claims a lien upon all the buildings upon both tracts, but without apportioning his claim, or specifying the amount of materials furnished for each building, or for the buildings upon each separate tract.

The question is thus distinctly presented, whether a lien claim, purporting to be filed under the provisions of the statute, including several separate buildings erected upon separate and distinct pieces of land, is a valid claim and within the requirements of the law.

I do not see upon what principle the claim can be sustained, if any regard be had to the letter, spirit, or policy of the act, to the rights of the land owner, or to the just claims of other encumbrancers. The arguments by which the claim is sought to be sustained, if their validity be admitted, will not permit the court to stop short of declaring that the claims of this highly favored and meritorious class of creditors, is of so high a character that it attaches at once to all the real estate of the land owner, whatsoever and wheresoever it may be. The real design of the law will be most effectually attained by a faithful observance of its plain provisions. The statute in terms restricts the lien to the building, for the erection and construction of which the work was done or the materials furnished, and to the land on which the same is erected. The first section of the act declares that every building shall be liable for the payment of any debt contracted and owing for labor performed, or materials furnished, for the erection and construction thereof, which debt shall be a lien on *such building*, and on the land whereon it stands, including the lot or curtilage whereon the same is erected. *Nix. Dig.* 524.

Almost every provision of the statute embodies the same idea. It limits the lien to the building, for the erection and construction of which the debt was contracted, and the land whereon it stands. The idea appears to be inseparably interwoven with the whole fabric and texture of the statute. The policy of the law rests upon the same idea, *viz.* to recompense the mechanic or materialman the value of the work done, or materials furnished, in the construction of the building whose value he has contributed to increase. And in the French law, the architects, masons, and others employed in building, are privileged creditors only to the amount of the increased value resulting from the work which they have done. *Code Napoleon, Art.* 2103.

It appears to me that the insuperable objection to permitting a lien for materials furnished for several buildings to be included in one claim, with no specification of the amount furnished for each, is, that it enables the lienholder to shift the encumbrance at his pleasure, and to place the bulk of the claim upon any building, to an amount far exceeding the value contributed to such building, in contravention of the plain terms and manifest policy of the statute, and in derogation of the rights of other parties. If the property all continued in the hands of the same owner, the practical effect of such practice, though it might prove embarrassing, might not be either unjust or oppressive. But when it is borne in mind that in most cases, as in the present, where there is a contest for priority of encumbrances, the original owner is insolvent or not interested in the result, and that the contest is between the lienholders themselves, or between them and equally meritorious classes of creditors, it is difficult to see how the practice can be permitted, consistently with law or with justice. The phraseology of the early lien law of Pennsylvania, passed on the seventeenth of March, 1806, was by no means so explicit and unequivocal as our present law. An attempt was made under the provisions of that act to fix a joint lien upon three houses, built at the same time by the same agent, though owned by different persons. Chief

Justice Tilghman, in delivering the opinion of the court, said: "The expressions in this act of assembly are so far from being clear in favor of a *joint lien* that they must be twisted and tortured to make them bear the appearance of it." He refused so to construe the act, and held that the joint claim was unauthorized, and consequently there never was a lien. *Gorgas* v. *Douglas*, 6 *Serg. & R.* 512. The opinion was confined in terms to the case of a lien upon several houses owned by several persons, though most of the reasoning of the eminent judge will be found equally applicable to the case of several houses owned by the same person. The question gave rise to much conflict of opinion. It was subsequently held in *Pennock* v. *Hoover*, 5 *Rawle* 291, that where the *adjoining* buildings were owned by different persons, and erected under a general request, the mechanic or material-man might file his claim against all the houses jointly, or he might apportion it among them and file a separate claim. The legislature, by the act of 1831, to remove the doubts which existed touching the construction of the law, authorized a joint lien to be filed by the materialman on *adjoining* buildings. But the inconveniences, not to say the consequent injustice of the practice, was such that the legislature, by the act of 1836, required the materialman who files a joint lien upon several buildings, to specify the amount which he claims to be due on each building, or in default thereof his claim should be postponed to other lien creditors. The provisions of the last act were applied and enforced in *Thomas* v. *James*, 7 *Watts & Serg.* 381.

The plain language of our statute is too clear to admit of being (in the emphatic language of Chief Justice Tilghman) thus twisted and tortured. And if it would admit of it, the experience of our sister state may serve as a warning against suffering judicial construction, even in pursuit of a fancied good, to move in advance of clear legislative enactment. But the filing of a joint lien, both by judicial construction and express legislation in Pennsylvania, has been limited to *adjoining* houses erected *together* upon the same block. It has

never been extended to separate blocks; and a lien filed against distinct blocks of buildings separated by streets, is held null and void upon its face. *Young* v. *Chambers*, 3 *Harris* 267; *Goepp* v. *Garteser*, 11 *Casey* 130.

A claim filed upon separate buildings and upon distinct lots of land, without apportioning the claim and designating specifically the amount claimed upon each, is not a compliance with the statute, and must be postponed to the claims of other encumbrancers. The case does not call for the decision of the question, whether the lien would have been valid if all these buildings had been upon the same tract, and no decisive opinion is intended to be expressed upon that point. It was stated upon the argument, that that question has been passed upon by the Chief Justice, and other Justices of the Supreme Court at the Circuits. I apprehend it will be found that those decisions apply only to the cases where the buildings are within the same curtilage, and mere appurtenances of the main building, so that a lien upon the main building would of necessity include the others. But I purpose hazarding no opinion which may conflict with any deliberately expressed opinion of the Justices of the Supreme Court; regarding it as highly important, that upon the construction of a statute so widely operative, practitioners should not be embarrassed, and the rights of parties prejudiced by conflicting judicial opinions.

The lien claims of Freeman Wood and of Stephen Lyon, are not among the papers placed in the hands of the court. It was, however, stated upon the argument and understood to be admitted, that they are both joint liens upon different buildings upon both lots, and are open to the same objection as Sayres' claim. The objection is not remedied by the fact reported by the master in regard to one of the claims, that by the evidence he is enabled to apportion the claim between the different buildings in proportion to the value of the materials used in the construction of each of them. The radical objection is that the claim was not filed according to the requirement of the statute, and constitutes, therefore,

under the provisions of the law, no encumbrance upon the premises. Nor does the fact that judgment at law is entered upon the lien—the lien claim not having been filed pursuant to the statute—give it any priority in payment, or advantage over liens upon which judgment has not been rendered. The order of priority of the encumbrances is in no wise affected by the judgment to enforce the lien.